IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JOSE "LEO" JIMENEZ,<br><br>    Plaintiff,<br><br>vs.<br><br>LIBERTY NORTHWEST INSURANCE CORPORATION,<br><br>    Defendant. | CV 14-253-M-JCL<br><br>ORDER |

Before the Court is Plaintiff Jose Jimenez's ("Jimenez") motion to compel discovery responses from Defendant Liberty Northwest Insurance Corporation ("Liberty Northwest"). For the reasons discussed, the motion is denied without prejudice.

## I.  **Background**

On December 10, 2003, Jimenez suffered a brain injury while working at his place of employment in Dillon, Montana. Carlos Sullivan, M.D. assessed Jimenez as having a whole person impairment rating of 74%. As a result of his injuries and impairment, Jimenez successfully pursued a claim for workers' compensation benefits, which Liberty Northwest pays. Those benefits include 16 hours of domiciliary care per day.

1

Liberty Northwest initially disputed, inter alia, the amount of domiciliary care claimed by Jimenez in the Montana Workers' Compensation Court. But on August 16, 2006, the parties entered a Stipulation for Dismissal Without Prejudice with respect to the referenced litigation. Liberty Northwest agreed to pay for 16 hours per day of domiciliary care to be provided Jimenez by family member and non-family member care givers. The terms of the Stipulation require Liberty Northwest to pay for the agreed domiciliary care "until medical information from [Jimenez's] treating physician establishes that [his] medical condition has improved so that a lesser number of daily domiciliary care hours or none is appropriate for [him]." (Doc. 1-2 at 1.)

Jimenez commenced this action on October 22, 2014, as a result of Liberty Northwest's alleged conduct relative to its coverage of his domiciliary care. Jimenez asserts that after the parties' entered the August 16, 2006 Stipulation, Liberty Northwest engaged in "a course of conduct to undermine the [Stipulation]." (Doc. 1 at 2.) Specifically, he contends Liberty Northwest contacted Dr. Hansen and his medical staff in an attempt to convince Dr. Hansen to reduce the number of hours of domiciliary care he believes Jimenez needs. Additionally, Jimenez alleges Liberty Northwest has conducted surveillance of Jimenez and his care givers thereby causing him emotional distress.

Jimenez invokes the Court's diversity of citizenship jurisdiction under 28 U.S.C. § 1332(a). He advances claims against Liberty Northwest for breach of the covenant of good faith and fair dealing, negligent or intentional infliction of emotional distress, violations of his rights to privacy and personal dignity as guaranteed him by the Montana Constitution. Jimenez seeks both compensatory and punitive damages.

## II. Discussion

The discovery requests at issue seek to have Liberty Northwest produce its: (1) records or insurance claims file concerning Jimenez, and (2) claims manuals and guidance regarding claims management.[1]

Liberty Northwest opposes Jimenez's motion to compel on three grounds: (1) The documents requested are protected by the work product doctrine; (2) The documents requested are protected by the attorney-client privilege; and (3) Jimenez is not entitled to seek discovery of documents because his claims are "premature" and not ripe for review. In a nutshell, Liberty Northwest argues that under the unfair trade practices provisions of the Montana insurance code – specifically Mont. Code Ann. § 33-18-242(6)(b) – Jimenez is precluded from

---

[1] Jimenez's motion to compel initially sought the production of Liberty Northwest's financial information. But Jimenez has withdrawn that aspect of his motion.

prosecuting the claims he is advancing until after a final settlement or judgment is entered in his favor with respect to his underlying workers' compensation claim for domiciliary care. Liberty Northwest further represents that it intends to file a motion for summary judgment upon that issue.

As a threshold matter, it is necessary to note that the "prematurity" objection voiced by Liberty Northwest has no basis in the Federal Rules of Civil Procedure. Rather, Fed. R. Civ. P. 26 provides that after the parties have conferred as required by Rule 26(f), each party may conduct whatever discovery a party chooses and in any sequence the party desires. Fed. R. Civ. P. 26(d).

Liberty Northwest was free to raise the issue of a stay of discovery with the Court at the Rule 16 scheduling conference but apparently chose not to. Liberty Northwest could also have sought a Rule 26(c) protective order staying discovery until the issue regarding the viability of Jimenez's claims could be resolved by way of a motion to dismiss or for summary judgment. The point to be made is that Liberty Northwest is not entitled to unilaterally delay discovery until it decides to file such a motion.

The foregoing point aside, the Court deems it appropriate under the circumstances presented to construe Liberty Northwest's legal argument as a belated request for a protective order staying discovery. These parties have been

litigating Jimenez's claim for workers' compensation benefits for nearly a decade. *See Jimenez v. Liberty Northwest Insurance Company*, CV 6-164-M-DWM (D. Mont.). A legitimate question exists regarding which, if any, of the claims advanced by Jimenez in this action may proceed under Montana law. The interests of judicial economy will best be served by that question being resolved prior to wholesale discovery being undertaken by the parties. A determination of what claims may proceed will bear directly upon the proper scope of discovery.

Jimenez's complaint arises from Liberty Northwest's conduct in investigating, adjusting, and handling his claim for workers' compensation benefits – his claim for domiciliary care. As a third-party claimant, Jimenez's claims are governed by the Montana Unfair Trade Practices Act (UTPA) at Mont. Code Ann. § 33-18-101, et seq. *See e.g., Brewington v. Employers Fire Insurance Company*, 992 P.2d 237, 239-40 (Mont. 1999); *Grenz v. Orion Group, Inc.*, 795 P.2d 444, 446-47 (Mont. 1990). The UTPA provides a third-party claimant with a cause of action for an insurer's violation of specific provisions of the UTPA. Mont. Code Ann. § 33-18-242(1). And the UTPA does not prohibit a third-party claimant from also bringing an action for common law bad faith against the insurer.[2] *Brewington*, 992 P.2d at 240.

---

[2]The Montana Supreme Court likens a third party claimant's common law claim for bad faith to a claim for breach of the duty of good faith and fair dealing.

The UTPA, however, imposes a procedural limitation on the timing of a third-party's UTPA claim, providing: "A third-party claimant may not file an action under this section until *after* the underlying claim has been settled or a judgment entered in favor of the claimant on the underlying claim." Mont. Code Ann. § 33-18-242(6)(b) (emphasis added). A similar limitation – recognized in Montana decisional law – applies to a third-party common law bad faith claim. *O'Connor v. National Union Fire Insurance Company of Pittsburgh, PA*, 87 P.3d 454, 459 (Mont. 2004). Those claims are subject to dismissal as premature unless filed after an underlying final settlement or judgment has been entered as to the specific workers' compensation benefit dispute that gave rise to the claim of bad faith. *O'Connor*, 87 P.3d at 456-57 (discussing *Grenz*, 795 P.2d at 446-47 and *Poteat v. St. Paul Mercury Insurance Company*, 918 P.2d 677, 680 (Mont. 1996)).

Here, Jimenez's complaint has its genesis in Liberty Northwest's conduct in investigating, adjusting, and handling of his workers' compensation claim for domiciliary care. And the parties apparently agree Jimenez's domiciliary care claim has not been finally resolved through settlement or judgment. Thus, to the extent his claims for relief stated in his complaint are directly predicated upon

---

*Brewington*, 992 P.2d at 240. *See also Thomas v. Northwestern National Insurance Company*, 973 P.2d 804, 810 (Mont. 1998) (equating a breach of the implied covenant of good faith and fair dealing with "what was commonly known as the tort of bad faith").

Liberty Northwest's conduct in evaluating Jimenez's need for domiciliary care, his causes of action advanced in this case would be subject to the limitation in Mont. Code Ann. § 33-18-242(6)(b). But the same limitation may not apply to the claims of Jimenez to the extent those claims are based upon alleged tortious conduct that stands independent of, or unnecessary to Liberty Northwest's investigation, adjusting and handling of Jimenez's workers' compensation claim for domiciliary care. At this stage of the litigation, however, there is not sufficient information before the Court for it to assess the precise factual basis for Jimenez's claims.

### III. Conclusion

For the reasons discussed, IT IS ORDERED that Liberty Northwest's pleadings, construed as a Fed. R. Civ. P. 26(c) motion for a protective order, is GRANTED. As a result, Jimenez's motion to compel is DENIED without prejudice to refiling after resolution of Liberty Northwest's proposed summary judgment motion.

IT IS FURTHER ORDERED that Liberty Northwest shall file its proposed summary judgment motion on or before **May 15, 2015**.

DATED this 4th day of May, 2015.

*Jeremiah C. Lynch*
Jeremiah C. Lynch
United States Magistrate Judge